IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**WALTER ROBERTS,**
    Petitioner,

v.                                        Case No. 3:04cv120/MCR/MD

**JAMES R. MCDONOUGH,**
    Respondent.
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

On November 17, 1999 petitioner was charged with first degree premeditated murder in the Circuit Court of Okaloosa County, Florida, in case number 99-1771-

CFA-002 (ex. A).[1]  On March 9, 2001 he entered a counseled no contest plea to the lesser charge of second degree murder, with a negotiated sentence (exs. B & C).  At the plea colloquy, petitioner stipulated a factual basis that the original arrest report and the probable cause attached thereto would be made a part of the record for purposes of the plea (ex. C, p. 2).  The "Addendum to Probable Cause" stated the facts of this case as follows:

> On 10-18-99 at approximately 1145 hours, the housekeeping staff (Jacqueline D. Braxton and Patrick Hart), of the Howard Johnson Motel, located the victim (Carrie Lindsay) lying on the bathroom floor and with her upper torso partially overhanging into the bathtub.  The victim had been located in room 215, which was in fact registered to the defendant (Walter Roberts), who has been traced to Cumming, Georgia (Defendant's home town).
>
> On 10-19-99 Doctor Cumberland conducted an autopsy on the victim's body and determined the cause of death to be strangulation. The victim's neck was bruised on both sides and the hyoid bone was in fact broken.
>
> Furthermore, Investigators Spinnella and Holland made contact with the defendant at the Forsyth County Sheriff's Department and after advisement of his constitutional rights, he confessed to the killing of the victim, and the confession was videotaped.
>
> The incident did in fact occur within the City of Fort Walton Beach, Okaloosa County, Florida, and is in violation of Florida State Statute 782.04 (1A), being an open count of Murder.

(Ex. B, p. 5).  The trial court accepted petitioner's plea, adjudicated him guilty of second degree murder, and sentenced him to thirty years imprisonment (exs. C & D).

---

[1] Hereafter all references to exhibits will be to those attached to doc. 13, unless otherwise noted.

Petitioner filed a notice of appeal, and the public defender filed an *Anders*[2] brief (ex. F). The appellate court affirmed without written opinion (ex. H). Petitioner then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (ex. I), raising several issues, including the one raised here, and the trial court denied the motion without a hearing (ex. L). Petitioner's appeal of the order was unsuccessful, and he now seeks federal habeas relief on a single issue. Respondent concedes that the instant petition is timely (doc. 13, p. 5), and that the claim presented was properly exhausted by presentation to the state courts for review (*id.* at 15).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> **(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—**
> **(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
> **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

---

[2] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Case No: 3:04cv120/MCR/MD

**28 U.S.C.A. § 2254 (2002).**

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUND FOR RELIEF

Petitioner contends that his plea was involuntary based on ineffective assistance of counsel. Specifically, he asserts that when counsel came to him with a plea offer from the state, he asked counsel for copies of the state's discovery disclosures. Counsel responded that he would provide copies of depositions, but that DNA test results and other documents relative to physical evidence would not be provided unless petitioner agreed to proceed to trial (doc. 1, p. 4). Petitioner says that later, after he had been sentenced, his wife obtained the DNA results from

defense counsel.  The DNA test established that semen found in Ms. Lindsay's body had not come from petitioner,[3] which would have neutralized the state's theory that petitioner had sex with her and then killed her rather than pay her.

A.   **Clearly Established Federal Law**

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969)).  A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976); *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted).  "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense."  *Morgan*, 462 U.S. at 645 n. 13, 96 S.Ct. at 2257 n.13 (citation omitted); *Boykin*, 395 U.S. at 243 & n.5, 89 S.Ct. at 1712 & n.5.  "A defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements."  *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986) (quoting *Morgan*, 426 U.S. at 645-47).  The extent to which the elements must be explained varies with the circumstances, but at the very least, due process requires that the defendant receive a description of the "critical

---

[3] In his Rule 3.850 motion petitioner said that "the test results are favorable to defendant Roberts."  (Ex. I, p. 6).

*Case No: 3:04cv120/MCR/MD*

elements" of the charged offense, such as the element defining the requisite intent. *Gaddy*, 780 F.2d at 944-45 (citing *Morgan*, 426 U.S. at 644, 647 n.18). Additionally, the accused should understand how his conduct satisfies the elements of the charge, and this entails that the accused have sufficient background information about the facts of his case to make an informed decision about the case against him. *Id.*, at 944-45.

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To obtain relief under *Strickland*, petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 688, 104 S.Ct. at 2064, 2068.

The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

To succeed on an ineffective assistance claim, petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690; *see also Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999); *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Indeed, petitioner must demonstrate that counsel committed "serious derelictions" of his duty. *Stano v.*

*Dugger*, 921 F.2d at 1150-51.  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  *Stano*, 921 F.2d at 1152 (citations omitted).

The second prong of the *Strickland* analysis requires petitioner to show that he was prejudiced as a result of counsel's deficient performance.  To satisfy this element, petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.  Conclusory, after-the-fact statements do not meet this requirement.  *See United States v. Gordon*, 156 F.3d 376, 380-81 (2nd Cir. 1998); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1987); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).

B.      Federal Review of State Court Decision

The Rule 3.850 court denied relief, finding that petitioner's claim was conclusively refuted by the transcript of the plea colloquy and the written plea agreement (ex. L, p. 1).  Additionally, the court noted that an exhibit to petitioner's Rule 3.850 motion -- a letter to The Florida Bar from petitioner's trial counsel -- refuted petitioner's allegation that he was not provided discovery materials because defense counsel stated in the letter that petitioner was provided with copies of all discovery materials.

The written plea agreement contained the following pertinent statements: "I am satisfied with the advice and services given to my (sic) by my attorney;" "I am

able to read and have read and understand everything on this entire agreement;" and "NO THREATS OR PROMISES HAVE BEEN MADE TO CAUSE ME TO ENTER THIS PLEA." (Ex. B). Thereafter, petitioner confirmed the agreement in open court. His testimony under oath at the plea colloquy directly contradicts what he now claims. In open court petitioner swore: that he was twenty-two years old and was one credit away from finishing high school; that he could read and write; that he had read, understood, and signed the plea agreement; that he agreed with counsel's announcements made in court (that petitioner would plead nolo contendere to second degree murder, waive a PSI, be adjudicated, and be sentenced to 30 years with credit for time served, and would stipulate to the factual basis contained in the original arrest report and probable cause affidavit); that he had not been mistreated in order to make him enter a plea; that he was waiving a trial; that he had talked to his attorney about all the ramifications of the plea as well as possible defenses; and that he had full discussions with counsel and had talked to him numerous times (ex. C, pp. 1-3). Petitioner's sworn testimony at the plea colloquy is presumed to be truthful. The Supreme Court has stated that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id*. Petitioner's after-the-fact recantation of his testimony at the change of plea hearing, which is contrary to the record and otherwise wholly unsupported, is insufficient to raise a viable claim of ineffective assistance of counsel.

Furthermore, petitioner has not established prejudice, *i.e.*, that there is a reasonable probability that had he seen the DNA test results he would not have

pleaded guilty and would have insisted on going to trial. The alleged DNA test results are nowhere in the record; petitioner has failed to provide the state court or this court with a copy of the critical evidence upon which he relies, even though he asserted in state court that he "was supplied the requested DNA evidence by his wife." (Ex. I, p. 5). Moreover, petitioner has not presented so much as an affidavit of his wife attesting that she saw the test results and that they reflect what petitioner says they do.[4] Petitioner himself is inconsistent in his characterization of the DNA test results, claiming in one instance that they "were inconclusive," (ex. M, p. 200) and in another that they revealed that "the semen found in the victim did not come from petitioner." (Doc. 1, p. 5; doc. 17, p. 2). This court will not "'blindly accept speculative and inconcrete claims . . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[5] Petitioner's allegations are inadequate to "undermine confidence in the outcome," *Strickland* at 694.

It is noted that the only direct reference in the record to the DNA test results is contained in a letter that defense counsel wrote to The Florida Bar in response to a grievance petitioner filed against him. Petitioner attached this letter to his Rule

---

[4] Interestingly, although petitioner asserts that his wife would be available to testify concerning <u>her</u> many attempts to obtain the DNA testing report, he does not assert that she would be available to testify concerning whether counsel made the report available to petitioner prior to his plea. Nor does petitioner assert that his wife would be available to testify that the DNA report shows what petitioner fancies it would.

[5] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

3.850 motion. In his letter counsel stated that the DNA report indicated that the petitioner "was a possible donor," and that according to the FDLE expert, the DNA "could be narrowed down to 1 in 20 of the caucasian male population." (Ex. I, p. 28).

In light of the foregoing, this court cannot say that the state court's denial of relief resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.[6]

Accordingly, it is respectfully RECOMMENDED that the Title 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Walter Roberts* in the Circuit Court of Okaloosa County, Florida, case no. 99-1771-CFA-002, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 20th day of July, 2006.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

---

[6]The court further notes that petitioner challenges the Rule 3.850 court's second reason for denying relief on this claim. The court held that petitioner's own motion refuted his claim that he had not been provided with discovery materials (ex. L, p. 69-70). The court's basis for this finding was that petitioner had attached a copy of defense counsel's letter to The Florida Bar, which said that petitioner had been given all the discovery materials, including the DNA result. Petitioner says that this was clear error, because what the Rule 3.850 court did was make a credibility determination based on competing matters contained in petitioner's sworn motion and counsel's letter. The court made this finding based on the state's urging, without citation of authority, that because petitioner attached a copy of defense counsel's letter to the motion, it became a part of the motion and must be accepted by the court as true (ex. J, p. 36). To say that this is a stretch is an understatement. Nevertheless, it is not necessary for this court to address this part of petitioner's claim, because the court has already determined that petitioner's claim is meritless for other reasons.

Case No: 3:04cv120/MCR/MD

*Page 14 of 14*

## **NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cv120/MCR/MD*